**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS,**
**DALLAS DIVISION**

| | |
|---|---|
| **BAR J-B CO., INC., AZTECA PETROLEUM,** ) | |
| **LLC, and AZTECA RS LLC** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. _____** |
| ) | |
| **TEXAS DEPARTMENT OF** ) | |
| **TRANSPORTATION and UNITED STATES** ) | |
| **ARMY CORPS OF ENGINEERS, and** ) | |
| **COLONEL CALVIN C. HUDSON II,** ) | |
| **DISTRICT COMMANDER, FORT WORTH** ) | |
| **DISTRICT, U.S. ARMY CORPS OF** ) | |
| **ENGINEERS** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION & REQUEST FOR HEARING**

Plaintiffs Bar J-B Co., Inc., Azteca Petroleum, LLC, and Azteca RS LLC file this

Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction as set forth

herein and in Plaintiffs' Complaint and Brief in Support[1], and would respectfully show the Court

as follows:

**I.**
**INTRODUCTION AND BACKGROUND**

**A.      The Project**

Defendant Texas Department of Transportation ("TxDOT"), amongst other activities, is

in the process of constructing a relief route for State Highway 31 in Navarro County, Texas to

---

[1] Plaintiffs incorporate fully by reference their Original Complaint for Declaratory Judgment, Temporary Restraining Order, and Other Injunctive Relief & Request for Hearing ("Plaintiffs' Complaint) and Brief in Support of Application for Temporary Restraining Order and Preliminary Injunction & Request for Hearing pursuant to F.R.C.P. 10(c).

the south of Corsicana, Texas (the "SH 31 Project"). Portions of the SH 31 Project are planned to cross over and/or are in the immediate vicinity of property on which oil and gas is currently being produced.  Azteca RS, LLC  owns the mineral interests for certain parcels of property, which are operated by Plaintiff Azteca Petroleum, LLC.  Bar J-B Co., Inc. is the operator of record for another set of mineral interests for property abutting the property Azteca Petroleum, LLC operates.

It is beyond dispute that TxDOT plans to construct the SH 31 Project over a right-of-way that will encounter and impact numerous oil wells, many of which are or are near oil wells owned and/or operated by the respective Plaintiffs. By the Texas Railroad Commission and Plaintiffs' records, the SH 31 Project right-of-way will encounter and impact no less than 64 oil wells.

TxDOT has begun construction on the SH 31 Project. In fact, TxDOT's contractors have already laid conduit for powerlines on two parcels of land with oil and gas leases operated by Azteca Petroleum, LLC. One such rerouting path required TxDOT's contractors to dig and bury conduit 15 feet deep right next to an active oil well and under the flow lines for one of Azteca Petroleum, LLC's leases.

As of the day this Application and Motion is filed, TxDOT's activities do not appear to have resulted in TxDOT encountering any wells owned/operated by Plaintiffs in a way that would cause the release of petroleum products or result in environmental contamination. But, construction of the SH 31-Project's right-of-way itself has not yet reached the properties owned/operated by Plaintiffs and the actively producing oil wells thereon.

Texas State Highway 287 stands between TxDOT's current construction of the right-of-way and beginning to construct over the property owned by Azteca RS, LLC and operated by

2

Azteca Petroleum, LLC. Only Texas State Highway 287 stands between TxDOT's current excavation and construction activities and the no less than 64 oil wells that TxDOT will encounter and impact once it starts construction on the properties owned/operated by Plaintiffs. By TxDOT's calculations, TxDOT will construct the  SH 31 Project right-of-way in such a manner that it will encounter and impact 31 *unplugged* wells, 21 plugged wells, and by TxDOT's own admission, 12 wells of *unknown* plugged status.

B.      **Major Federal Action**

Pursuant to a December 16 2014 Memorandum of Understanding (the "MOU") between TxDOT and the Federal Highway Administration the (the "FHWA"), TxDOT is deemed to be a federal agency with respect to environmental review and consultation. As such, TxDOT is a federal agency for its activities in conducting, regulating, and approving the SH 31 Project which thereby constitute "major federal actions" that trigger a host of *pre-activity*, preconstruction, environmental and cultural mandates under the National Environmental Policy Act, 42 U.S.C. § 4332 ("NEPA") and the Endangered Species Act, 16 U.S.C. § 1531 ("ESA").

Additionally, the United States has approved and committed to (at least partially) fund the SH 31 Project, which also compels treatment of the SH 31 Project construction as a "major federal action" triggering the NEPA and ESA mandates be fulfilled and done so *prior to* the expenditure of those federal funds. The United States Army Corps of Engineers' (the "Corps") own actions in regulating and approving the SH 31 Project by issuing a permit under the Clean Water Act, 33 U.S.C. § 1251–1387 (the "CWA") constitutes major federal action within the meaning of NEPA.  *See*, 40 CFR § 1508.18(b)(4).

The Defendants previously purported to submit to NEPA, the CWA, and the ESA protocols as preconditions to the SH 31 Project. However, the information upon which the Corps

3

relied was incomplete and inaccurate. Additionally, the information upon which TxDOT relied was incomplete and in many instances actually called for additional investigation, assessment, and action, which TxDOT itself acknowledged in the SH 31 Project environmental documents, but elected not to perform.

TxDOT and the Corps' approval of the SH 31 Project, and TxDOT's actual undertaking in constructing the SH 31 Project, therefore are legally impermissible under NEPA and the ESA, because the project has not been subject to the mandatory statutory and regulatory analyses, premised on best, and inherently requiring, complete, scientific, commercial, environmental, and cultural data.

TxDOT acknowledges these deficiencies throughout the SH 31 Project's Environmental Assessment (the "EA") and Finding of No Significant Impact (the "FONSI").  The content of these two (2) documents which contradicts or precludes, TxDOT's ability to make the very assertion the title to the FONSI requires: no significant impacts. Despite the deficiencies, TxDOT is moving forward with the SH 31 Project, not just with respect to design and approval but with substantial construction.

## II.
## PLAINTIFFS' ENTITLEMENT TO INJUNCTIVE RELIEF

### A.    Standard of Review – Standard for Injunctive Relief

Plaintiffs seeks to enjoin further activity on the SH 31 Project, including construction, until such time as TxDOT complies with its NEPA, CWA, and EA obligations and the Corps complies with its CWA obligations.  Issuance of a temporary restraining order, followed by a Preliminary Injunction as sought by Plaintiffs is appropriate here because, pursuant to Federal Rules of Civil Procedure 65, Plaintiffs: (1) are substantially likely to succeed on the merits; (2)

4

are at serious and immediate risk of irreparable harm; (3) prevail on a balance of harms analysis; and (4) the requested relief will enhance rather than deserve the public's interest. *See, e.g. Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (addressing preliminary injunction standard) (citing *Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1353 (N.D. Tex. 1991), *aff'd*, 948 F.2d 1286 (5th Cir. 1991) (per curiam).

The Defendants' improper and erroneous actions and/or inactions are expressly made actionable through the Administrative Procedures Act, 5 U.S.C. § 7202 ("APA"), or in the alternative, Mandamus and Venue Act, 28 U.S.C. § 1361 ("Mandamus Act"). TxDOT's actions in constructing the SH 31 Project are additionally redressable through this Court's powers to preserve its jurisdiction as codified in the All Writs Act (28 U.S.C. § 1651), or this Court's inherent powers, *see Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) to prevent TxDOT from engaging in activities that will undermine this Court's ability to resolve, and exercise its jurisdiction over the matters in dispute.

**B.    Plaintiffs are Substantially Likely to Succeed on the Merits of Their Claims**

**1.    TxDOT**

TxDOT has engaged in conduct that constitutes "action" or "inaction" or action "unlawfully withheld" under the APA. *See Sierra Club v. U.S. Army Corps of Engineers*, 446 F.3d 808, 816 (8th Cir. 2006). To succeed on the merits Plaintiffs must demonstrate TxDOT's actions or inaction were arbitrary, capricious or not in accordance with law. Set forth below are certain instances in which TxDOT action or inaction violated the APA:

- TxDOT's initial decision to prepare an environmental assessment rather than environmental impact statement was arbitrary, capricious and not in accordance with law because the SH 31 Project is a "highway project of 4-lanes or more on a new location," and such projects "normally require an EIS." *See*, 23 C.F.R. § 771.115(a). The EA repeatedly describes the Project as a "4-lane highway on new location."

5

Appx. pp. 31, 32, 42, 44, 127, 129. TxDOT's decision to prepare an EA rather than an EIS without additional analysis or justification is contrary to its own Environmental Handbook entitled, "Preparing An Environmental Assessment" that states among other related requirements, any deviation from preparing an EIS on a 4-lane highway must be justified in writing. Appx. p. 750, § 3.3.

- TxDOT's decision after preparing its Environmental Assessment to issue a FONSI rather than perform an EIS was arbitrary, capricious and not in accordance with law. TxDOT's failures on this issue are twofold. NEPA was violated when TxDOT issued its FONSI; NEPA was also violated when TxDOT decided not to perform an EIS. After completing the EA, TxDOT was obligated to perform an EIS because the EA contained a determination that encountering the oil field and/or encountering hazardous wastes sites had the very real potential for significantly affecting the environment. *See*, Appx. p. 80; 40 C.F.R. § 1501.4(a)(1)(c); 23 C.F.R. § 771.119(i). The EA recommends additional study of both potential impacts from construction in the oil field, and potential impacts associated with the hazardous wastes sites. *Ibid*. TxDOT's decision not to perform any "additional study" of these areas was arbitrary, capricious and not in accordance with law. Its decision not to perform an EIS when an EA concludes there may be significant impacts associated with construction that would significantly, and adversely, affect the environment, was arbitrary, capricious and not in accordance with law. 23 C.F.R. § 771.119(i).

- TxDOT's decision to issue the FONSI, standing by itself was arbitrary, capricious and not in accordance with law. Determining in the EA significant impacts could occur from construction of the SH 31 Project, prevents TxDOT from concluding in its FONSI[2] there are "no significant impacts." To do so, was arbitrary, capricious and not in accordance with law.[3]

- TxDOT's failure to complete recommended investigation was also arbitrary, capiricous and not in accordance with law because it demonstrates TxDOT's failed to take the required "hard look" that is the standard of inquiry for NEPA decision making. *See Robinson v. Methow Valley Citizens Council*, 490 U.S. 332, 109 S. Ct., 1835, 1845 (1989) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, n. 21 (1976)).

- TxDOT's continued construction violates 40 C.F.R. § 1506.1, as adopted by the Corps in 33 C.F.R. § 230.22 and the FHWA in 23 C.F.R. § 771.113(d)(4), preventing any action being taken which would (1) have an adverse environmental impact, and (2) limit the choice of reasonable alternatives. TxDOT's action is also prejudicing the ultimate decision on the SH 31 Project, and determining subsequent development while limiting alternatives. *See* 40 C.F.R. § 1506.1(c)(3). The decision by TxDOT to commence and continue construction in violation of 40 C.F.R. § 1506.1 and 23

---

[2] The FONSI fails in this respect on its face; it must identify why the action undertaken will not have a significant effect on the environment. 40 C.F.R. § 1508.13.

[3] TxDOT's failures to perform necessary, additional studies, in the form of an EIS, also result in an under reporting of impacts that prejudices the Alternatives Analysis and precludes TxDOT from determining appropriate mitigation.

6

C.F.R. § 771.113(d)(4) is arbitrary and capricious, not in compliance with law, and can only corrected by injunctive relief.

**2.    The U.S. Army Corps.**

It is significantly likely Plaintiffs will also succeed on the merits of their APA claims addressed to the U.S. Army Corps of Engineers. The Corps action was arbitrary, capricious, and not in accordance with law when it decided to issue Nationwide Permit 14 to TxDOT for the following reasons:

- The FONSI on which the Corps relied, required and committed TxDOT to obtaining Individual rather than only Nationwide Permits;[4]

- The Corps' decision to issue Nationwide Permit 14 to TxDOT based on impacts associated with a 2-lane, rather than 4-lane highway.[5]

- The Corps' decision to issue TxDOT Nationwide Permit 14 even though impacts associated a 2-lane road exceeded the 0.50 acre threshold for requiring an Individual Permit. Appx. p. 253–54.

**3.    TxDOT's Commitments in the FONSI[6]**

In the FONSI, TxDOT makes certain commitments and takes on certain responsibilities. Its conclusions are arbitrary, capricious and not in accordance with law, as are its failures to abide by the commitments it undertakes in the FONSI. TxDOT's conclusions were arbitrary and capricious; those conclusions along with TxDOT's failure to satisfy its commitments are actionable under the APA. Those include:

- The conclusion the EA "provides sufficient evidence and analysis for determining that and Environmental Impact Statement is not required." Appx. p. 229.

---

[4] An Individual Permit is subjected to greater disclosure, scrutiny, and regulatory review (including Public Notice) than a Nationwide Permit. By requiring Individual Permits, the FONSI also requires TxDOT to satisfy the additional procedural protections associated with them.

[5] The EA at Appx. p. 31, makes it clear the SH 31 Project is to be built in phases or segments. By considering only the 2-lane segment for the road, the Corp. engages in segmentation; by dividing a project into segments, and then reviewing only "segments" of the project, rather than the project as a whole, project impacts are understated.

[6] For purposes of argument only, and without admission, Plaintiffs in this section treat the FONSI as though it were valid, though it is not, in order to demonstrate TxDOT's failures to comply with it.

- "TxDOT will ensure completion of all mitigation and commitments as indicated below:

  - Waters of the US – Nationwide Permits (NWP 14 with Pre-Construction Notification), Individual Permits, Wetland Mitigation . . .

  - An intensive archeological survey with shovel testing and/or backhoe trenching (as necessary based on field conditions) will be completed for areas of proposed ROW previously not surveyed after right of entry has been obtained.

  - Approximately 64 oil wells and/or injection/disposal wells with oil storage tanks and equipment are located within the proposed ROW.  These will be capped or relocated prior to commencement or construction activities." Appx. p. 229.

TxDOT has failed to take the action it committed to take by failing to obtain any Individual Permits, failing to determine appropriate Wetland and other Waters of the US mitigation, and failing to conduct the promised archaeological survey, and failing to cap or relocate the approximately 64 oil wells and/or injection/disposal wells prior to commencing construction.

### 4.       Plaintiffs Are At Serious and Immediate Risk of Irreparable Harm

As set forth in the supporting affidavits of Sid Baker, Jon Seib and Todd Seib, TxDOT has commenced construction and has built the SH 31 Project to a point where it is ready to cross State Highway 287 onto Plaintiffs' leasehold tracts.  Should TxDOT continue construction into the oil field without first performing the required studies, investigations, and other activities required under NEPA, the CWA, and the ESA, Plaintiffs will be irreparably harmed.  Plaintiffs procedural rights will be forever lost.  The construction of the SH 31 Project will also irreparably harm Plaintiffs in a way that is different from the procedural harm suffered by them because of TxDOT's failures.  Plaintiffs may actually be subjected to responsibility and liability for hazardous substances encountered by TxDOT during its construction.  TxDOT's failure to satisfy its NEPA, CWA and ESA obligations directly exposes Plaintiffs to these harms.

8

9

5.    **Plaintiffs Prevail on a Balancing of Harms Analysis**

The actions of TxDOT and the Corps that are arbitrary, capricious, and not in accordance with law, stem from their own conduct and are proved by their own admissions.  They include obligations required by statute, regulation, guidance, as well as commitments and obligations independently assumed by TxDOT in connection with this Project.  Neither TxDOT nor the Corps have satisfied their mandatory duties; Plaintiffs have no such duties.  To the extent Plaintiffs conduct is alleged to cause any harm to Defendants, Plaintiffs deny it; to the extent TxDOT and the Corps complain they are harmed by being required to follow laws, regulations and their own guidance and commitments – such harm is self-inflicted.  Plaintiffs should prevail in any objective balancing of harms to the parties in this action.  Plaintiffs requested relief enhances the publics' interest and does not deserve it.

The relief sought Plaintiffs is appropriate for several reasons:

- It maintains the integrity of the NEPA, CWA and ESA processes by requiring the Defendants to comply with applicable laws, regulations, guidelines and their own commitments;

- The relief sought, specifically the requiring of an Individual Clean Water Act Permit, is in the public's interest because unlike a Nationwide Permit it requires enhanced agency review, public notice, and the ability of the public to comment;

- TxDOT took on certain obligations and committed to perform them (like plugging and abandoning wells among others) prior to the commencement of construction. Given the state of TxDOT's construction of the SH 31 Project, it has disavowed those obligations required to be performed "preconstruction."  The only way to assure those preconstruction obligations are not evaded in their entirety is to enjoin the Project until they are completed properly.

- Only injunctive relief, and not money damages or any other relief at law, will remedy TxDOT's and the Army Corps' APA violations.

- Plaintiffs are entitled to injunctive relief because if TxDOT and the Corps are not required, at this time, to perform the statutorily and contractually mandated investigations and reviews and obtain the appropriate Corps permits, approvals and

10

consents, Plaintiffs lose forever the procedural rights they are assured under NEPA, the CWA, and the ESA.

Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiffs are prepared to post a security bond in an appropriate amount. In cases where, such as here, plaintiffs seek injunctive relief pursuant to NEPA, it is common for Courts to impose smaller or nominal bonds in light of the important public interest in the enforcement of NEPA. A reduced bond is especially justified here because all this Application and Motion seeks to do is require TxDOT to follow its own requirements for environmental review. Any harm to TxDOT is self-inflicted.

The additional relief sought by Plaintiffs in the form of vacating the Nationwide Permit 14 issued to TxDOT is also appropriate. An Individual Permit, rather than a Nationwide, should have been issued in connection with the SH 31 Project, among other reasons, because the FONSI commits TxDOT to obtaining an Individual Permit. In addition, however, Nationwide Permit 14 should be vacated because it expired on March 18, 2017.. The Permit does, however, provide a grace period of one year for any activity authorized by it [the Permit] and commenced prior to the expiration date of March 18, 2017. All work under the Permit must be completed within twelve (12) months of that date, by March 17, 2018. It is undisputed TxDOT will not complete/has not completed the activities authorized by Nationwide Permit 14 by March 18, 2018.

WHEREFORE, Plaintiffs Bar J-B Co., Inc., Azteca Petroleum, LLC, and Azteca RS, LLC respectfully requests this Court: (1) set an immediate hearing with all parties on Plaintiffs request for a temporary restraining order; (2) grant Plaintiffs request to vacate the Nationwide Permit previously issued by the USACE to TxDOT; (3) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the

11

alternative, Mandamus Act, commanding the Corps to fulfill its permitting responsibilities under the CWA; (2) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the alternative, Mandamus Act, directing TxDOT to fulfill its obligations to conduct a proper environmental evaluation mandated by NEPA; (4) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to 28 U.S.C. § 2202, the APA—or, in the alternative, Mandamus Act, directing TxDOT to fulfill its responsibilities to engage in consultation with FWS regarding protection of regulated species under the ESA; (5) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to the APA, All Writs Act, or this Court's inherent powers, forbidding TxDOT's continued, illegal construction of the SH 31 Project without submitting to proper permitting procedures mandated by the CWA; (6) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to the APA, the All Writs Act, or this Court's inherent powers, forbidding TxDOT's continued construction of the SH 31 Project unless TxDOT completes an appropriate environmental evaluation pursuant to NEPA, that constitutes legal, final agency action and authorizes any such construction or operation; (7) grant a Temporary Restraining Order and preliminary prospective injunctive relief pursuant to the APA, the All Writs Act, or this Court's inherent powers, forbidding TxDOT's continued construction of the SH 31 Project unless TxDOT fulfills its ESA obligations; and (8) grant Plaintiffs such other and further relief, at law or in equity, to which it may show itself justly entitled.

4816-6757-1546v.7 017250.00002

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/ Frederick W. Addison, III_____
Frederick W. Addison, III
State Bar No. 00903350
Claire Carroll
State Bar No. 24092224
Mark J. McMullen
State Bar No. 24106288
500 North Akard Street, Suite 3800
Dallas, Texas 75201-6659
(214)855-7500 (Telephone)
(214)855-7584 (Facsimile)
Email: ccarroll@munsch.com
Email: raddison@munsch.com
Email: mmcmullen@munsch.com

**ATTORNEYS FOR PLAINTIFFS BAR
J-B CO., INC., AZTECA PETROLEUM,
LLC, and AZTECA RS LLC**

## CERTIFICATE PRIOR TO FILING THIS COMPLAINT

Prior to filing this Complaint, on the 12th day of March 2018, Plaintiffs furnished by electronic means a copy of the Complaint, Application, and Brief in Support (along with all supporting materials) to, and conferred with, counsel for the State in the underlying condemnation action, Thornton, Wood, Esq. Plaintiffs also furnished a copy of the same pleadings furnished to Mr. Woods to, and conferred with, Randall C. Marshall, counsel for the U.S. Army Corps of Engineers. These copies were provided as courtesy copies only and not for purposes of service.

/s/ Frederick W. Addison, III._____
Frederick W. Addison, III

13